# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

V.

KELLY WAYNE SMITH(xx/xx/1960)

**CRIMINAL COMPLAINT**

CASE NUMBER: 10-4m (AEG)

I, Steven G. Kurkowski, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about February 3, 2010, in Kenosha County, in the State and Eastern District of Wisconsin, **KELLY WAYNE SMITH**, the defendant, did distribute and possess child pornography in violation of Title 18, United States Codes, Sections 2252A(a)(2) and 2252A(a)(5)(B).

I further state that I am a Special Agent with the U.S. Immigrations and Customs Enforcement, and this complaint is based on the following facts:

Please see the attached affidavit.

Continued on the attached sheet and made a part hereof:   X  Yes   ___ No

Signature of Complainant
Steven G. Kurkowski

Sworn to before me and subscribed in my presence,

Date: 2/4/10

at Milwaukee, Wisconsin
City and State

The Honorable AARON E. GOODSTEIN
United States Magistrate Judge
**Name & Title of Judicial Officer**

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, STEVEN G. KURKOWSKI, being duly sworn, do hereby depose and state:

## INTRODUCTION

1. I am a Senior Special Agent with U.S. Immigration and Customs Enforcement (hereinafter "ICE"), and have been so employed by ICE (formerly the U.S. Customs Service) since September 2000. From October 1985 to September 2000, I was employed as Senior Deputy United States Marshal.

2. I am currently assigned to the Resident Agent in Charge office, Milwaukee, Wisconsin. One of my primary duties is the investigation of child pornography and child exploitation crimes. In addition, I am assigned as the RAC Milwaukee program manager for Operation Falcon and Operation Emissary, two nationwide ICE investigative initiatives focusing on Internet child pornography crimes. I also am assigned to a number of Project Flicker targets, another nationwide ICE investigative initiative focusing on child pornography obtained via the Internet. I am also the ICE representative to the Project Safe Childhood Task Force, Eastern District of Wisconsin, which is a nationwide U.S. Department of Justice initiative involving proactive child pornography/child exploitation investigations and community outreach programs. Moreover, I am also involved in joint child pornography and child exploitation investigations with special agents from the Wisconsin Department of Justice – Division of Criminal Investigation/Internet Crimes Against Children Task Force throughout the State of Wisconsin.

3. In connection with my official duties, I investigate criminal violations of federal statutes, including violations of Title 18, United States Code, Section 2252A(a)(2) (receipt or distribution of child pornography); and, 2252A(a)(5)(B) (possession of child pornography).

1

4. As a result of my participation in this investigation, receiving information from other law enforcement officials, and analyzing documents and records, I am familiar with the circumstances surrounding the facts detailed in this affidavit.

5. The information contained in this affidavit is not, however, an exhaustive account of everything I know about this case. Rather, it contains only the facts that I believe are necessary to establish probable cause that Smith committed violations of Title 18, United States Code, Section 2252A(a)(2) (receipt and distribution of child pornography); and 2252A(a)(5)(B) (possession of child pornography).

## EXPERIENCE OF THE AFFIANT

6. As part of my basic agent training, I have received specialized instruction in the area of child pornography and child exploitation investigations.

7. From September 2000 to November 2000, I received instruction for cyber-crimes/child pornography investigations at the Federal Law Enforcement Training Center in Brunswick, Georgia. During March of 2001, I received specialized instructions in Internet Investigations at the ICE Cyber Crimes Center, Fairfax Virginia.

8. In March 2005, I attended the Investigation and Prosecution of Advanced Child Exploitation Cases Seminar sponsored by the Executive Office of United States Attorneys at the Department of Justice – National Advocacy Center, Columbia, South Carolina. This seminar focused on various aspects of Internet investigations, including newsgroups, Internet Relay Chat, and peer-to-peer technology. This seminar also covered nationwide child exploitation investigations, computer forensics, and responsibilities concerning child exploitation victims.

9. In September 2005, I completed the Child Exploitation Undercover Investigations Training at the ICE Cyber Crimes Center, Fairfax, Virginia. The training covered subjects such as

Case 2:10-mj-00004-AEG    Filed 02/04/10    Page 3 of 13    Document 1

commercial websites, chat rooms, defenses to undercover operations, and interviews/interrogations of child exploitation suspects. I am currently certified to conduct casual undercover investigations involving suspects allegedly involved in child exploitation crimes that utilize e-mails, websites, or chat rooms on the Internet.

10. I have continued my training in child pornography and child exploitation investigations by participating in in-service training conducted at the Wisconsin Department of Justice – Division of Criminal Investigation/ICAC Task Force Training Meeting in June, 2007 and at the U.S. Department of Justice – Project Safe Childhood National Conferences in December 2007 and September 2008.

11. During my career, I have participated in approximately one hundred and fifty investigations related to child pornography and child exploitation crimes. This involvement includes obtaining and executing search warrants, interviewing subjects of these investigations, assisting other agents in the collection of evidence or identifying evidence from forensic examinations.

12. Throughout my years as a child exploitation investigator, I have participated in approximately seventy-five search warrants on residences, offices, and Internet Service Providers pertaining to the retrieval of evidence of possessing, distributing, receiving, and producing child pornography. I have also interviewed sex offenders who have been charged with violating state and federal laws, which prohibit the possession, distribution, receipt, and production of child pornography. I have acted as the main case agent and officer on investigations. I also review, catalog and analyze the retrieved evidence. I have assisted other agents in obtaining and executing search warrants, interviewing subjects of these investigations, and assisting in the collection of evidence or identifying evidence from forensic examinations.

13. Due to my experience in the area of investigating child sex crimes, I have become familiar with the means by which individuals who collect and distribute child pornography retrieve the child pornographic images, the manner in which they communicate with the sellers, distributors, and suppliers of child pornography, and the manner in which they collect and save the child pornography that they have retrieved.

## BACKGROUND ON THE USE OF COMPUTERS FOR CHILD EXPLOITATION

14. In my experience, the primary manner in which child pornography is produced, distributed, and possessed is through the use of computers. Pornographers produce both still and moving images directly from common video or digital cameras attached to a computer. Producers of child pornography often use a device known as a scanner to transfer photographs into a computer readable format, and then either send the images directly through the Internet or copy the images into a disk and send them through the U.S. mails. Many digital cameras can be connected directly to a computer and through the use of various software programs, photographs and videos can be transferred directly to a computer, can be transferred to another computer via the Internet, and can be stored directly onto a computer.

15. Each time an individual views an online digital image, that image, or remnants of that image, are automatically stored in the hard-drive of the computer used to view the image. Once an individual opens an image of child pornography on his computer or accesses such an image through the Internet, that image is saved in the computers "cache." This allows investigators to review a history of the images opened/accessed by the user of the computer long after the image has been opened or accessed.

16. Digital information can also be retained unintentionally, e.g. traces of the path of an electronic communication may be automatically stored in many places (e.g. temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities

4

generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to peer software, when the computer was sharing files, and some of the files, which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. In fact, I am aware that computer files or remnants of files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Even when the files have been deleted, they can be recovered months or years later using readily available forensic tools. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

17. Individuals who possess, receive, transfer, and distribute child pornography use communication devices known as a modem or cable connections that allow any computer to connect to another computer by telephone line, cable, or wireless service. By connection to an Internet service provider, electronic contact can be made to millions of computers around the world. Internet service providers are sometimes commercial concerns, which allow subscribers to dial local numbers and connect to a network, which is connected to their host systems. "Hotmail," for example, is an anonymous and free e-mail service based in California. These Internet service providers allow electronic mail service between subscribers, and usually between their own subscribers and those of other networks. Once someone has subscribed to an Internet service provider, it costs nothing to send or receive image files or electronic mail

5

(E-Mail). Further, each image is a digital duplicate of the computer original, and distributing the pornography to others via computer does thus not diminish a child pornography distributor's collection. This open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity. Once contact is established, it is then possible to send text messages and graphic images to others. These communications can be quick, relatively secure, and as anonymous as desired.

18. The ability to store images in digital form makes the computer an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown exponentially within the last several years. Hard drives with a capacity of five hundred gigabytes are not uncommon, and these drives can store thousands of images at very high resolution.

19. Images can be electronically mailed to anyone with access to a computer and modem, and they can be downloaded onto computers, computer discs, or CD-ROM's for ease of storage, duplication, and distribution. With the proliferation of commercial services providing Internet service, computer transfer and digital copying is the preferred method of distributing child pornography.

20. The capacity of computers, and the ease of access and relative anonymity afforded to computer users, permits individuals with an interest in child pornography to amass large collections of such materials.

21. Based on my past training and experience investigating child pornography cases, I am also familiar with Internet chat rooms, such as those operated by Microsoft Corporation (MSN), Yahoo (Yahoo Chat), America OnLine (AOL Chat rooms and AOL Instant Messenger), and Internet Relay Chat (mIRC) and Google Hello. Chat rooms are forums usually about a particular subject posted on a particular website or server and distributed to others on the Internet. The role of a chat room is to allow

6

users to access groups where they read and send messages (either to the entire "room" or "private 1 to 1") as well as send and/or receive pictures from the other members in the chat rooms. In order to participate in a chat room, an individual must join that chat room, supply identifying information, and follow the rules set forth by the chat room or group moderator.

22. I am aware that evidence of group use can be secured by reviewing the software loaded on a user's computer. The software configuration can reveal, among other things, which server a user gets his messages from, which groups the user subscribed to, and messaged read or sent by the user. Also, I am aware that servers, such as MSN, keep records of activities associated with a group including its creator or manager, identity of its registered members, as well as messages posted and/or pictures posted by a member.

23. Based on my training and experience, I am aware that individuals who are involved with child pornography or child exploitation are unlikely to ever voluntarily dispose of the images they possess, as those images are viewed as prized and valuable materials; that those individuals are highly likely to seek out additional images to satisfy their sexual appetites; and their ability today to seek out and obtain additional child pornography is unprecedented because of the Internet. Furthermore, I am aware that individuals who have an appetite for child pornography are likely to always have that desire, and that such individuals often molest children as well.

24. I also am aware, based on my training and experience, that a suspect's lack of a prior history of child-related sex offenses is not a determining factor in the outcome of these investigations. The majority of suspects investigated by me who were arrested, charged, and convicted, had no prior record of child sex offenses. I know that the Internet now offers an avenue of accessibility to child sex offenders, especially for child pornography and child enticement, that was not available before the Internet. I also

7

know that many convicted child sex offenders have had multiple victims over a period of many years before being caught. Many of those offenders are skilled in gaining the trust not only of their victims, but also of parents, relatives, guardians, friends and co-workers, which allows them to victimize children without raising suspicions. Your affiant also knows that many of these offenders have been caught as a result of investigations that began as child pornography investigations.

## SUMMARY OF FACTS ESTABLISHING PROBABLE CAUSE
### A. QUALIFICATIONS OF THE SOUTHWEST MISSOURI CYBER CRIMES TASK FORCE INVESTIGATOR

25.  I have been provided information regarding this investigation from Detective Ed Bailey who is employed by the Jasper County Sheriff's Office, Carthage, Missouri. Detective Bailey was commissioned as a law enforcement officer in the State of Missouri in October, 1993 and has been employed by the Benton County (MO) Sheriff's Office; Warsaw (MO) Police Department, Henry County (MO) Sheriff's Office; and since August 2007 with the Jasper County (MO) Sheriff's Office. Detective Bailey has experience in domestic violence, child abuse, sex crimes and major case investigations. Detective Bailey began assignments to Internet Crimes Against Children (ICAC) investigations in January 2008 and has been with the Southwest Missouri Cyber Crimes Task Force since it's inception in June 2009.

### B. BACKGROUND OF INVESTIGATION

26.  On January 20, 2010, Detective Bailey, acting in an undercover capacity entered the Yahoo chat room "Parenting 5." From Detective Bailey's training and experience, all of the "Parenting" rooms and "Married But Looking" rooms are well known in the ICAC community as chat rooms frequented by individuals wishing to engage in sexual activity with minors and/or trade child pornography. This activity

8

begins by joining the chat room, but taking conversations to "private chat," i.e. on-line chat between two users that is not visible to others in the chat room.

27. Detective Bailey was "idle" in the chat room, meaning he was not engaged in any activity or conversations with any other room members. During this time, a Yahoo user with the screen name "kwsmgmt" initiated a private conversation with "jillparker76," the undercover identity of Detective Bailey. The chat consisted of personal information about each user, including ages, number of children, marital status. The conversation also included discussions on sexually abusing children including "jillparker76" (a/k/a Detective Bailey) describing having sex with her children (fictional) and "kwsmgmt" having past and present sexually molesting his 3 children (2 girls ages 12 and 16; and 1 boy age 14). This chat session also included talk of "kwsmgmt" sending images and/videos to "jillparker76" containing child pornography.

28. Detective Bailey a/k/a "jillparker76" continued to engage in private online chats with "kwsmgmt" on January 21, 2010; January 22, 2010; January 25, 2010; January 26, 2010; and January 28, 2010 where the main topic was "kwsmgmt" making future plans to meet "jillparker76" for the purpose of engaging in sex with the fictional daughters of "jillparker76," "jillparker76" herself, "kwsmgmt" and his children, alone or as a group, between the "adults" or the "children." The subject matter was at times very graphic and on most chats, also included indications that "kwsmgmt" had sent "jillparker76" numerous images and videos containing child pornography, and that "kwsmgmt" had a "large collection" on discs somewhere in his house.

29. Through these online chats, Detective Bailey was able to determine that "kwsmgmt" was Kelly SMITH who resided somewhere in Wisconsin, most likely in the Kenosha, Wisconsin area. It also appeared from the chat logs provided by Detective Bailey to me that SMITH works in the construction industry renovating stores and is required to travel to various locations for several days at a time. Based

9

upon a review of some chats, SMITH appears to work for a company under contract to Walgreen's for store renovations, and uses laptop computers (work and personally owned) while travelling.

30. Detective Bailey also reported that he received 3 e-mails on January 22, 2010 to his undercover "gmail" e-mail address of "jctgirls4kelly@gmail.com" from "kwsmgmt@gmail.com." SMITH had suggested to Detective Bailey that a "gmail" account should be created in order to receive e-mails that would contain images and videos. I have reviewed information contained in these 3 e-mails. Each one contains a message from SMITH to "Jill Parker" a/k/a Detective Bailey suggesting the contents of each e-mail. These messages are "for my happy girls;" "a little bit of everything to make my girls happy;" and, "some might be new some older, just a little more of everything for you all." Detective Bailey advised me that on January 22, 2010, he reviewed the images and videos sent to his undercover "gmail" e-mail account from Kelly SMTIH and there are 18 movies and 139 images that fit the definition of child pornography. Detective Bailey has provided me with a CD containing all the images and videos he received and I am in concurrence that in excess of 100 images and videos depict child pornography (i.e. boys and girls, ages 3 to 14 engaged in sexual intercourse with adult males, or oral and anal sex with adult males or other minor boys).

31. During chats on January 26th and 28th, respectively "kwsmgmt" made reference to being "home." Specifically, on a January 28th chat, "kwsmgmt" made reference to sending "jillparker76" disks before he left in the morning for Boston.

C. IDENTIFICATION OF "kwsmgmt" AS KELLY W. SMITH OF KENOSHA, WISCONSIN

32. During the transmission of an image or video by "kwsmgmt" to ""jillparker76," Detective Bailey captured the Internet Protocol address. This Internet Protocol address is a unique number assigned to a computer connected to the Internet provided by an Internet Service Provider. The Internet

10

Protocol address captured was 65.29.233.157, which, when queried, is a number assigned to Time Warner/Road Runner.

33. On January 21, 2010, Detective Bailey served an Investigative Subpoena upon Time Warner/Road Runner to identify the individual assigned to IP address 65.29.233.157 on January 20, 2010 between 1230 and 1600 hours CST. On January 27, 2010, Time Warner/Road Runner responded to the Investigative Subpoena indicating that this IP address has been assigned to Kelly SMITH, 5625 37th Avenue, Kenosha, WI. The length of Road Runner service was listed as 08/15/2008 - present.

34. On January 22, 2010, Special Agent Michael Hoell from the Wisconsin Department of Justice - Division of Criminal Investigation/ICAC Task Force observed a silver GMC Jimmy with Wisconsin license plate 903PCT parked in front of the garage door at 5625 37th Ave., Kenosha, WI. According to the Wisconsin Department of Transportation, this vehicle is registered to Kathy Ann SMITH (DOB 01/28/1970) and Kelly W. SMITH (DOB 08-09-1960) at this address.

35. On January 28, 2010, I contacted WE Energies to obtain information on 5625 37th Ave., Kenosha, WI. I was advised that electrical service is provided to this address in the name of Kelly and Kathy Smith, who have been customers at this address since August, 2008.

36. On January 29, 2010, I was advised by U. S. Postal Service Inspector Suzanne Rossman that information from the delivery supervisor at the Kenosha Post Office is that the only name known for mail delivery to 5625 37th Ave., Kenosha, WI is Kelly SMITH.

### D. INVESTIGATIVE ACTIVITY ON JANUARY 30, 2010

37. On January 30, 2010, Detective Bailey advised that SMITH left Kenosha, WI on a business (construction) trip to the Boston, MA area on January 29, 2010. Detective Bailey stated that during on-line chats, SMITH engaged a webcam where he masturbated and ejaculated for "jillparker76."

11

During this session, Detective Bailey indicated that the room décor was similar to that of a hotel room. SMITH told Detective Bailey that he might be back to Wisconsin on Monday (02/01/2010) or possibly Tuesday (02/02/2010).

38. Detective Bailey also advised that prior to the on-line chat session with SMITH, his undercover "g-mail" e-mail account had received 24 e-mails from SMITH with 1,571 attached image files and 7 attached video files. Detective Bailey reviewed these images and videos and indicated that 1,244 images and 4 videos depicted child pornography. Detective Bailey stated that these e-mails appear to have been sent during the evening hours of January 29, 2010 from an IP address belonging to Sprint PCS.

### E. FEBRUARY 3, 2010 SEARCH WARRANT

39. On February 3, 2010, your affiant obtained a search warrant from U.S. Magistrate Judge Aaron E. Goodstein for Smith's residence located at 5625 - 37th Avenue, Kenosha, Wisconsin. On February 3, 2010, agents executed the aforementioned search warrant.

40. At the time of the search, Smith and his wife were present at the residence. Smith's wife admitted that she had previously observed child pornography that belonged to her husband on a computer at the residence.

41. On this date, Smith was also interviewed by agents. Smith admitted sending all of the child pornography described previously in this affidavit. Smith also admitted to engaging in the chats with "jilljarker76." In sum, Smith admitted to receiving, distributing and possessing child pornography.

42. A Special Agent preliminarily examined the computers located at the residence and observed images consistent with child pornography on computers that were not manufactured in the State of Wisconsin.